

ORIGINAL

FILED
OCT 28 2011
CLERK
UNITED STATES BANKRUPTCY COURT
SAN JOSE, CALIFORNIA

AMIEL L. WADE (No. 184312)
WADE & SILVERSTEIN
A Professional Corporation
8070 Santa Teresa Blvd., Suite 230
Gilroy, CA 95020
Telephone: (408) 842-1688
Facsimile:(408) 852-0614

Attorneys for Plaintiffs
JEFF GREEN AND PAMELA MILLS-GREEN

IN THE UNITED STATES BANKRUPTCY COURT

NOTHERN DISTRICT OF CALIFORNIA

IN RE: THE CENTERLINE GROUP, INC.

Debtor,

Case No. 11-54779

Chapter 7

AMENDED –
**PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S PETITION FOR RELIEF FROM BANKRUPTCY STAY AND NOTICE OF HEARING**

**Date:** December 7, 2011
**Time:** 2:15
**Dept.:** Court Room 2030
**Judge:** Hon. Arthur S. Weissbrodt

-1-

PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S PETITION FOR RELIEF FROM BANKRUPTCY STAY AND NOTICE OF HEARING

NOTICE IS HEREBY GIVEN that on December 7, 2011 at 2:15 am or as soon thereafter as the matter may be heard, in room 2030 of the above-entitled Court, located at 280 South First Street, San Jose, California, Creditors PAMELA AND JEFF GREEN IVAN will, and hereby do move for a relief from stay. Creditors JEFF GREEN AND PAMELA MILLS-GREEN, hereafter Creditors, requests an order for relief from the stay under Section 362(a) of Title 11 of the United States Code as to the debtor herein [and the trustee] to permit Creditor to pursue the lawsuit that it initiated against the Debtor in the Superior Court of California, County of Santa Clara.

This motion is made and based on this notice of motion, the attached memorandum of points and authorities, the Petition for relief from stay and declaration of Amiel L. Wade, and on the following facts and circumstances:

1. On 7/25/11, the Creditors have filed an adversary proceeding to determine the dischargeability of their debt.

2. The adversary proceeding case number is 11-5211.

3. The Adversary proceeding and this petition was and is brought in connection with the Defendant's Case # 11-54779 under chapter 7 of Title 11 of the United States Code now pending in this Court. This Court has jurisdiction over this proceeding under Title 11 of the United States Code, Section 523(c) and Title 28 of the United States Code, Sections 157(b) and 1334. The adversary proceeding and this proceeding are "core proceedings" as provided in title 11 of the United States Code, Section 157(b)(2)(I).

4. The Defendant is a corporation that seeks discharge herein under Title 11 of the United

-2-

PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S PETITION FOR RELIEF FROM BANKRUPTCY STAY AND NOTICE OF HEARING

Case: 11-54779    Doc# 10    Filed: 10/28/11    Entered: 10/28/11 15:33:36    Page 2 of 16

States Code.

4. The Plaintiffs previously filed a civil complaint in the Superior Court of Santa Clara County on 7/13/10 entitled *Green v. the Centerline Group Inc. et al,* Superior Court Case # 1-10 CV176786 (the **"Complaint"**), against the Defendant and its owners alleging that the Defendant engaged in fraud and intentional misconduct. The lawsuit was stayed as a result of the Defendant filing this bankruptcy action. The conduct engaged in by the Defendant and all of the facts surrounding the Defendant's fraudulent and willful misconduct is alleged in the Complaint which is attached herein as <u>Exhibit A</u> and incorporate herein in full as though completely set forth.

5. The debt of the Defendant to Plaintiffs JEFF GREEN AND PAMELA MILLS-GREEN, as a result of the conduct engaged in by the Defendant, as alleged in the Complaint is non-dischargeable under Section 523 of title 11 of the United States Code.

6. The Plaintiffs are entitled to recover reasonable attorney's fees pursuant to Business and Professions Code Section 7160 and Code of Civil Procedure Section 1029.8(a) and other codes.

7. The Debtor has acknowledged that it has an insurance carrier that would be responsible for any liability found on the Debtor's part to the Plaintiffs.

8. It would be unjust to prevent the Plaintiffs from continuing their lawsuit against the Defendant under the circumstances that exist here. The Plaintiffs should be permitted to continue their lawsuit against the debtor on all claims, including, but not limited to, the claims covered by the insurance policy.

-3-

PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S PETITION FOR RELIEF FROM BANKRUPTCY STAY AND NOTICE OF HEARING

## PRAYER

WHEREFORE, Creditors pray for an order providing for the following:

1. Termination of the stay under Section 362(a) of Title 11 of the United States Code with regard to Creditor, so that Creditor may continue their lawsuit against the Defendant.

2. That the order be binding on all parties and their heirs, successors, assigns, including the trustee in the above-entitled case and any subsequent assignee or transferee of the debtor.

3. That the order be effective with regard to any subsequent filings on the part of the Debtor under the Bankruptcy Code.

[PURSUANT TO BANKRUPTCY RULE 112(2)(d) OF THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, ANY PARTY WISHING TO OPPOSE THIS MOTION MUST FILE AND SERVE A FORMAL RESPONSE WITH THE COURT AND MAIL A COPY TO THE ATTORNEYS FOR THE MOVING PARTY NOT LESS THAN FIVE (5) DAYS PRIOR TO THE HEARING ON THIS MOTION.]

Dated: 10/27/11

WADE & SILVERSTEIN

By _____
AMIEL L. WADE

Attorneys for Plaintiffs
PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S

-4-

PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S PETITION FOR RELIEF FROM BANKRUPTCY STAY AND NOTICE OF HEARING

AMIEL L. WADE (No. 184312)
HEIDI K. HENGEL (No. 258740)
WADE & SILVERSTEIN
A Professional Corporation
8070 Santa Teresa Blvd., Suite 230
Gilroy, CA 95020
Telephone: (408) 842-1688
Facsimile: (408) 852-0614

Attorneys for Plaintiffs
JEFF GREEN AND PAMELA MILLS-GREEN

ENDORSED
FILED
2010 JUL 15 P 2: 54

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By: _____ Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN THE COUNTY OF SANTA CLARA

JEFF GREEN AND PAMELA MILLS-GREEN )
    Plaintiffs, )
vs. )
)
THE CENTERLINE GROUP, INC.; )
CHRISTOPHER ADAMSKI; EMERSON )
DEVELOPMENT GROUP INC., TIM )
TOMASSINI; OLD REPUBLIC SURETY CO. )
and DOES 1 through 50, inclusive. )
    Defendants )
)

Case No. 1-10-CV-176786

**PLAINTIFFS JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES**

1.     Plaintiffs JEFF GREEN AND PAMELA MILLS-GREEN are and at all times herein mentioned were residents of Santa Clara County, California.

2.     Plaintiffs are informed and believe and on that basis allege, that at all relevant times mentioned herein, Defendant CHRISTOPHER ADAMSKI (*"ADAMSKI"*) was a resident of Monterey

-1-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES
1-10-CV-176786

County, California. However, the contract between the parties was entered into in Santa Clara County. Also, the real property that all Defendants inflicted harm upon is also located in Santa Clara County.

3. Plaintiffs are informed and believe and on that basis allege, that at all relevant times mentioned herein, Defendant THE CENTERLINE GROUP, INC. (*"CENTERLINE"*) was a resident of Monterey County, California and a California Corporation that was suspended.

4. Plaintiffs are informed and believe and on that basis allege, that at all relevant times mentioned herein, Defendant THE EMERSON DEVELOPMENT GROUP INC. (*"EMERSON"*) was a resident of Monterey County, California.

5. Plaintiffs are informed and believe and on that basis allege, that at all relevant times mentioned herein, Defendant TIM TOMASSINI (*"TOMASSINI"*) was a resident of Monterey County, California.

6. Plaintiffs are informed and believe and on that basis allege, that at all relevant times mentioned herein, Defendant Old Republic Surety Company (*"Old Republic"*), is and was at all times herein mentioned a resident of Santa Clara County, California.

7. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive. Plaintiffs therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is in some manner responsible for the injuries and damage sustained by Plaintiffs, as alleged herein.

8. At all times mentioned, each Defendant, including, but not limited to Defendants DOES 1 through 10, inclusive, and each of them, were, and each was, an agent, associate and/or employee, acting

-2-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

with the permission, consent and/or in the aid or assistance of one or more of the other above-named Defendants and each of them at all times herein mentioned, was acting within the course and scope of his/her/their agency and/or employment of said Defendants.

9. Furthermore, because of the agency, employment and/or joint venture relationship between Defendants, each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants.

10. Each Defendant ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of Defendants, and each of them, as set forth below, and/or retained the benefits of said wrongful acts.

11. Plaintiffs are informed and believe and on such basis alleges that Defendants, ADAMSKI, TOMASSINI and DOES 1-5 were at all times herein mentioned the owner and promoter of Defendant CENTERLINE.

12. Plaintiffs are informed and believe and on such basis alleges that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants and Defendant CENTERLINE such that any individuality and separateness between Defendants and Defendant CENTERLINE have ceased, and Defendant CENTERLINE is the alter ego of Defendants in that Defendant CENTERLINE is, and at all times herein mentioned was, a mere shell and sham without capital, assets, stock, or stockholders.

13. Plaintiffs are informed and believe and on such basis allege that Defendant CENTERLINE was conceived, intended, and used by Defendants as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of Defendant.

14. Plaintiffs are further informed and believe and on such basis allege that Defendant CENTERLINE is, and at all times herein mentioned was, so inadequately capitalized that, compared

-3-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case: 11-54779   Doc# 10   Filed: 10/28/11   Entered: 10/28/11 15:33:36   Page 7 of 16

with the business to be done by the Defendant and the risks of loss, its capitalization was illusory and/*or* trifling.

15. Plaintiffs are further informed and believe and on such basis allege that Defendant CENTERLINE is, and at all times herein mentioned was, the alter ego of Defendants and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Defendants such that any separateness has ceased to exist, in that Defendants used assets of the corporation for his/her personal uses, caused assets of the corporation to be transferred to him/her without adequate consideration, and withdrew funds from the corporation's bank accounts for his/her personal use.

16. Plaintiffs are further informed and believe and on such basis allege that Defendant CENTERLINE is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Defendants carried on their business in the name of the corporation exactly as they had conducted it previous to forming the corporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendant CENTERLINE and Defendants does not, and at all times herein mentioned did not, exist.

17. Plaintiffs are further informed and believe and on such basis allege that Defendant CENTERLINE is, and at all times herein mentioned was, controlled, dominated, and operated by Defendants as their individual business and alter ego, in that the activities and business of Defendant corporation were carried out without the holding of directors' or shareholders' meetings, without maintaining records or minutes of any corporate proceedings, and Defendants entered into personal transactions with Defendant corporation without the approval of other directors or shareholders.

18. Plaintiffs are further informed and believe and on such basis allege that adherence to the fiction of the separate existence of CENTERLINE as an entity distinct from Defendants would permit abuse of the corporate privilege and would sanction a fraud and produce an inequitable result in that Defendant Intentionally formed a corporation in an attempt to shield liability from his own despicable and unlawful conduct and to shield himself from liability.

-4-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

19. Plaintiffs are informed and believe and on such basis allege that Defendants, ADAMSKI and DOES 6-10 are, and at all times herein mentioned were the sole owners and promoter of Defendant EMERSON.

20. Plaintiffs are informed and believe and on such basis allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between ADAMSKI and DOES 6-10 and Defendant EMERSON such that any individuality and separateness between Defendants and Defendant EMERSON have ceased, and Defendant EMERSON is the alter ego of Defendants in that Defendant EMERSON is, and at all times herein mentioned was, a mere shell and sham without capital, assets, stock, or stockholders.

21. Plaintiffs are informed and believe and on such basis allege that Defendant EMERSON was conceived, intended, and used by Defendants as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of Defendant Purcell.

22. Plaintiffs are further informed and believe and on such basis allege that Defendant EMERSON is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by the Defendant and the risks of loss, its capitalization was illusory and/*or* trifling.

23. Plaintiffs are further informed and believe and on such basis allege that Defendant EMERSON is, and at all times herein mentioned was, the alter ego of Defendants and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between the Defendants such that any separateness has ceased to exist, in that Defendants used assets of the corporation for their personal uses, caused assets of the corporation to be transferred to him/her without adequate consideration, and withdrew funds from the corporation's bank accounts for his/her personal use.

24. Plaintiffs are further informed and believe and on such basis allege that Defendant EMERSON is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Defendants carried on their business in the name of the corporation exactly as they had conducted

-5-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

Case: 11-54779   Doc# 10   Filed: 10/28/11   Entered: 10/28/11 15:33:36   Page 9 of 16

it previous to forming the corporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendant EMERSON and Defendants do not, and at all times herein mentioned did not, exist.

25. Plaintiffs are further informed and believe and on such basis allege that Defendant EMERSON is, and at all times herein mentioned was, controlled, dominated, and operated by Defendants as his individual business and alter ego, in that the activities and business of Defendant corporation were carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceedings were maintained, and Defendants entered into personal transactions with Defendant corporation without the approval of other directors or shareholders.

26. Plaintiffs are further informed and believe and on such basis allege that adherence to the fiction of the separate existence of CENTERLINE as an entity distinct from Defendants would permit abuse of the corporate privilege and would sanction a fraud and produce an inequitable result in that Defendant Intentionally formed a corporation in an attempt to shield liability from his own despicable and unlawful conduct and to shield himself from liability.

27. In performing and failing to perform the acts alleged herein, Defendants aided and abetted the others; as each Defendant is and/or was the employee, agent, joint venturer and/or representative of the others, and was acting on their behalf, within the scope of that agency, employment and/or joint venture and with their permission and consent; as each Defendant acted both directly and indirectly through agents and employees. As such said Defendants shall hereinafter be collectively referred to as *"Defendants"* and/or *"Defendant"*.

-6-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

# FACTS

28. On September 23, 2009, the Defendant and the Plaintiffs entered into an agreement in which the Defendant agreed to perform general contracting services and remodel the Plaintiffs" residence located at 1381 Arleen Avenue, Sunnyvale CA (the *"Agreement"*). See the Agreement attached as *Exhibit A*, hereto. Prior to the Agreement being reached, Defendant ADAMSKI made the following promises to the Plaintiffs:

A. That the Defendant would finish all work within six-months (the *"Promised Completion Date"*);

B. That the Defendant would perform all of the Services in accordance with the operative building plans (the *"Plans"*);

C. That the Defendant had the means, ability, workforce and resources to perform the Services on Plaintiffs' Home within the Promised Completion Date;

D. That the Defendant would not take any action that would be harmful to the Plaintiffs;

E. That the Services would be performed with the upmost professionalism and at the highest quality;

F. That the Defendant would be performing the Services personally along with his employees and that there would always be a licensed contractor on the premises;

G. That the Defendant would use his best efforts to perform the services;

J. That the Defendant possessed all of the state licenses necessary to complete Plaintiffs' job.

29. In reliance on the forgoing, the Plaintiffs agreed to hire the Defendant to perform the services. After the Agreement was reached, the Defendant began to perform Services. However, instead of performing the Services in accordance with the Plans, finishing the Services within the Promised

-7-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

Completion Date, or performing the Services in the highest quality as promised, the Defendant performed abysmally.

Section 14 of the Agreement allows the Plaintiffs to terminate their contract with Defendant for *any* of the following reasons:

   A. Defendant's refusal or failure to supply enough properly skilled workers or proper material to complete the job in the time specified in the Agreement;
   B. Defendant's failure to make prompt payment to subcontractors, laborers, or material suppliers for labor performed on or materials furnished to the project;
   C. Defendant's persistent disregard of any law relating to the project; and
   D. Defendant's violation of the Agreement.

30. As indicated below, because of Defendant's conduct, the Plaintiffs was able to terminate the Agreement for *any of the reasons* articulated in the above paragraph. Furthermore, as also indicated below, because the Defendants had engaged in repeated violations of the law, the Plaintiffs notified the Defendant on May 28, 2010 that he would be terminated effective June 7, 2010.

31. Although the Agreement was between the Plaintiffs and The Centerline Group Inc., Plaintiffs are informed and believe that Defendant Centerline was suspended and therefore Centerline had no authority to enter into the Agreement. Plaintiffs are also informed and believe that the owners of Centerline are responsible for all actions of Defendant Adamski under the doctrine of Respondeat superior.

32. Furthermore, after the project began, the Defendant started to invoice the Plaintiffs under the name of Defendant Emerson and the Defendant claimed that Defendant Emerson was also a company for which the Defendant was working when he was providing the services. Therefore, Defendant Emerson is also responsible individually and for all actions of Adamski under the doctrine of Respondeat Superior.

-8-

### Failed to Complete Project

33. The Defendant failed to complete the services by the Promised Completion Date. For example, instead of taking six months to finish the work, the defendant worked on the project for over eight months. Furthermore, instead of completing the Services by the Promised Completion Date, the Defendant never finished the Services. Ultimately, the Defendant walked off the job and abandoned it on or about May 25, 2010 (claiming that he needed more money to finish it).

### Subpar Work Performance and Defects

34. *Second*, the Defendant failed to complete the work at the highest quality or use his best efforts. Plaintiffs' home, located at 1381 Arleen Avenue, Sunnyvale CA, (the *"Home"*) contains many defects, including, but not limited to, all the defects contained in *Exhibit B*, hereto, which is fully incorporated herein by reference as though fully set forth. As a result of the Defendant's conduct the Plaintiffs have had to (and will have to) retain and pay other contractors and workers to repair the defects caused by the Defendant. The cost to repair said defects is currently unknown to the Plaintiffs. Furthermore, the Plaintiffs are informed and believe that Defendant installed the shower and adjacent walls with the wrong sheetrock. Accordingly, said sheet rock will need to be replaced at a cost of thousands of dollars. Furthermore, the Defendants poor work is reflected on the permit card which shows numerous inspection failures at a rate that is outrageous. Furthermore, the Defendants failed on numerous occasions to call for inspections when they were required. As a result the Plaintiffs will have to hire contractors to undo the work performed by the Defendants, so that that the city inspectors can perform the proper inspections and sign off on the work. Moreover, as a result of the Defendants' poor and subpar work, the Plaintiffs' home has been deemed unsafe by city officials and the Plaintiffs have been required to move out of their home while other contractors attempt to repair the poor work performed by the Defendants to render the Home safe. The Plaintiffs have now had to incur further expenses as a result of being kicked out of their home.

### Failure to Provide Accounting

—9—

35. The Defendant failed to provide and accounting as required by the parties' Agreement. For example, the Agreement entitled Defendant to bill the Plaintiffs on a cost-plus 15% bases. However, despite the Plaintiffs' repeated demands to the Defendant that he provide them with the documentation necessary to show that he indeed did charge them cost-plus 15%, the Defendant has refused to provide them with said documentation and information. Moreover, the invoices that the Defendant did provide to the Plaintiffs, contained numerous services and materials that he had charged them for which have not been provided and/or installed.

**Fraud and Disregard of the Law**

36. The Defendant consistently disregarded the law and committed fraud. For example, the Defendant continuously lied to the Plaintiffs and told them that he had paid all of the subcontractors when he had indeed not done so (in an attempt to get the Plaintiffs to make further payments). The Defendant also took money from the Plaintiffs allegedly to pay for certain materials and for the performance of certain Services on the job by subcontractors, but instead of using the money on the job, the Defendant would spend the money for his own benefit. The Plaintiffs expressed concern to the Defendant that he was not paying his subcontractors for the performance of their work on the project.

37. Instead of paying the subcontractors and/or telling the Plaintiffs the truth about his non payments, the Defendant lied to the Plaintiffs and told them that "all subcontractors had been fully paid." Moreover, when the Plaintiffs asked the Defendant to provide a signed conditional lien release as well as *up to date* lien releases from his subcontractors, the Defendant refused to do so and subsequently walked off the job (threatening to terminate the project and record a mechanic's lien). Furthermore, the Defendant continuously invoiced the Plaintiffs for work and materials that had not been provided or performed in violation of the law. All of the above activity amounts to fraud and embezzlement. Additionally, when the Defendants did provide lien releases, they were not up to the date on the day which they were provided. By way of example and not limitation, if the Defendants provided the

-10-

PLAINTIFF JEFF GREEN AND PAMELA MILLS GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiffs with a subcontractor lien release in June, the release would be limited only to a date which was one or two months prior to the date on which said release was being provided to the Plaintiffs.

38. By Way of example and not limitation, the Defendant charged the Plaintiffs for installation of their fireplace when the fireplace had not yet been installed and for other materials and services that had not been delivered. By law, the Defendant could not send an invoice requiring the Plaintiffs to pay you for Services and materials that had not yet been provided and/or delivered, particularly when the Defendant already owed the Plaintiffs $44,209.66 in reimbursements for overcharges.

### Illegal Billing and Change Orders

39. The Defendant charged the Plaintiffs an illegal deposit of $20,000. California's Business and professions Code Section 7159(c)(8), makes clear that the most a contractor could charge for a retainer is $1,000. Subsequently, the Defendants continued to illegally invoice the Plaintiffs. *First*, Business and professions Code Sections 7159(c)(5) and 7159.6 make clear that any change orders that are made in connection with a project must be made in writing prior to the work being performed. Here, in connection with Defendant's conduct with the Plaintiffs, the Defendant, among other things: i) billed the Plaintiffs for work and materials that he failed to deliver to the project, ii) charged the Plaintiffs for mistakes that he personally made (without getting their approval or having a change order), iii) charged the Plaintiffs for changes that he unilaterally made on the project (without their consent and without getting a written change order), and iv) billed them for numerous changes that he decided to make unilaterally without any written agreement from them.

40. Business and Professions Code section 7159(c)(9)(c), makes clear that it is against the law for any contractor to collect payment for any work not yet completed, or for materials not yet delivered. In fact, the section explicitly requires that all contracts between a homeowner and a contractor contain the following language in capital letters "IT IS AGAINST THE LAW FOR A

-11-

CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED." Defendant's agreement failed to contain such language.

41. In fact, the Defendant's Agreement is illegally drafted in many respects as it fails to contain many of the language required by Business and Professions Code section 7159, including, but not limited to, a required mechanic's lien warning, a specific description regarding when progress payments would be made along with a clearly identifiable amount and date on which they would be paid, the language referenced above alerting the homeowner that it is against the law for you to accept money for services and work not performed, and much more.

42. Furthermore, without a written change order (in violation of the law, the Defendant made the following changes to the project:

A. <u>Cabinet Changes.</u> When the cabinets arrived, they were not the cabinets that had been approved by the Plaintiffs. Defendant approved of them unilaterally. Furthermore, in connection with another section of the cabinetry, Defendant made changes to it that were not identified in the plans, and when Mr. Green complained about it, Defendant stated that the Plaintiffs would have to pay additional money to get him to rectify his error;

B. <u>Master Vanities.</u> Defendant made changes to master vanities without the Plaintiffs' approval.

C. <u>Doors.</u> Defendant decided to install the wrong doors in the master bedroom.

D. <u>Finishing items on the Doors.</u> The Plaintiffs told Defendant specifically not to put the finishing items on the doors because they still had to be painted. Instead of adhering to their concern, Defendant unilaterally had the items affixed to the doors, which has caused problems in connection with the painting.

E. <u>Carpet.</u> For good cause, the Plaintiffs asked Defendant not to install the carpet until further work had been performed because they did not want to have the carpet damaged prior to the completion of the project. Instead of listening to their concerns, Defendant once again, unilaterally had the carpets installed and subsequently the carpet sustained substantial damage.

-12-