## FOURTEENTH CAUSE OF ACTION

## (IMPOSITION OF CONSTRUCTIVE TRUST)

111. Plaintiffs adopt and restate paragraphs 1 through 110, as though fully set forth herein.

112. By virtue of his fraudulent acts as indicated above, Defendants hold money wrongfully taken from Plaintiffs as a constructive trustee for Plaintiffs' benefit.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

## FIFTEENTH CAUSE OF ACTION

## (FRAUD PURSUANT TO BUS. & PROF CODE 7160)

113. Plaintiffs hereby incorporate by reference paragraphs 1 through 112, inclusive, of this Complaint, as if fully set forth herein.

114. The contract between the Plaintiffs and the Defendants was a work of improvement.

115. The Defendants made fraudulent representations to the Plaintiffs which caused them to rely on said representations, which led to his decision to employ the Defendant.

116. As a result of the Defendants' fraud the Plaintiffs has suffered the damages identified above.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

Case: 11-54779   Doc# 10-2   Filed: 10/28/11   Entered: 10/28/11 15:33:36   Page 1 of 16

## SIXTEENTH CAUSE OF ACTION
## LIABILITY PURSUANT TO BOND
### (Against Old Republic Surety Company and Does 11-15)

117. Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 116, inclusive, and the allegations in all of the other claims alleged in this cross-complaint, as if fully set forth herein verbatim.

118. Plaintiffs are informed and believe and based thereon allege that Defendant Old Republic Surety Company and DOES 11-15 are a bonding company licensed to do business in the State of California, and engaged in the business of issuing bonds to contractor's such as Defendants. Plaintiffs are informed and believe that the Defendants provided errors and omission insurance (pursuant to a bond) to some of the Defendants. Plaintiffs also are informed and believe and on said basis allege that Defendant Old Republic Surety Company made Defendants the principal on a bond in the amount of over $12,500. For the avoidance of doubt, Old Republic Surety is only being sued on the bond pursuant to this cause of action and no other causes of action herein.

119. Defendants committed fraud and all of the other acts as alleged above.

120. As a proximate result of Defendants' conduct, the Plaintiffs has been damaged in the reasonable sum, according to proof, but exceeding the minimum jurisdiction of this court. Defendants are liable to the Plaintiffs on the bond to pay these damages, as well as any and all other damages or losses sustained by the Plaintiffs by reason of the Defendant's fraud.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

-30-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

## SEVENTEENTH CAUSE OF ACTION
### (EXPRESS INDEMNITY)

121. Plaintiffs incorporate herein by reference Paragraphs 1 through 120, above, as if set forth fully herein.

122. As a term and condition of the parties' contract, the Defendants agreed to indemnify and hold Plaintiffs harmless from "any and all claims, costs, expenses, damages and liabilities arising out of, directly or indirectly, the acts and/or omissions of Subcontractor, its partners, employees, and/or agents."

123. Thereafter, as indicated above, as a result of the Defendants' conduct, the Plaintiffs has been forced (and will be forced) to pay other contractors money.

124. Plaintiffs have performed all the conditions and obligations to be performed on his part under his agreement with Defendant.

125. By reason of the foregoing, Plaintiffs are entitled to be indemnified by Defendant in the sum of at least $200,000.00, but Defendants have not paid any part of this sum to Plaintiffs.

126. Plaintiffs have incurred, and continue to incur, necessary and reasonable attorney's fees and other legal costs in prosecuting this action against Defendants. By the terms of the agreement between Plaintiffs and defendant, Plaintiffs are entitled to recover these fees and costs from Defendants. Plaintiffs do not know the full amount thereof at this time and will move to amend this complaint to state the amount when it becomes known to him or on proof thereof.

### PRAYER

WHEREFORE, Plaintiffs prays judgment against Defendants and each of them, as follows:

-31-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES

On the FIRST COUNT:

1. General damages according to proof (but at least in the amount of $200,000.00);
2. Special damages according to proof;
3. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct; and
4. For interest as allowed by law

On the SECOND COUNT:

5. General damages according to proof (but at least in the amount of $200,000.00);
6. For special damages according to proof;
7. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct; and
8. For interest as allowed by law

On the THIRD COUNT:

9. For general damages according to proof (but at least in the amount of $200,000.00);
10. For special damages according to proof;
11. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

On the FOURTH COUNT:

7. For general damages according to proof (but at least in the amount of $200,000.00);
8. For interest as allowed by law

On the FIFTH COUNT:

-32-

9. For general damages according to proof (but at least in the amount of $200,000.00);

10. For special damages according to proof;

11. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

On the SIXTH COUNT:

12. For general damages according to proof (but at least in the amount of $200,000.00);

13. For special damages according to proof;

On the SEVENTH COUNT:

14. General damages according to proof (but at least in the amount of $200,000.00);

15. For special damages according to proof;

On the EIGHTH COUNT:

16. General damages according to proof (but at least in the amount of $200,000.00);

17. For special damages according to proof;

18. For interest as allowed by law

On the NINTH COUNT:

19. General damages according to proof (but at least in the amount of $200,000.00);

20. For special damages according to proof;

On the TENTH COUNT:

21. For general damages and the amount necessary to prevent the unjust enrichment of Defendant in a sum according to proof (but at least in the amount of $200,000.00);

22. For interest as allowed by law;

-33-

On the ELEVENTH COUNT:

23. For the value of the property converted;

24. For interest at the legal rate on an amount according to proof pursuant to Section 3336 of the Civil Code;

25. For damages for the proximate and foreseeable loss resulting from Defendant's conversion in an amount according to proof;

26. For interest at the legal rate in an amount according to proof pursuant to section 3287(A) of the Civil Code;

27. For damages for time and money properly expended in pursuit of the converted property

On the TWELFTH COUNT:

28. General damages according to proof (but at least in the amount of $200,000.00);

29. For special damages according to proof;

On the THIRTEENTH COUNT:

30. General damages according to proof (but at least in the amount of $200,000.00);

31. For special damages according to proof;

32. For interest as allowed by law

On the FOURTEENTH COUNT:

33. For an order declaring that Defendant holds the money taken as trustee of a resulting trust for the benefit of Plaintiffs, and that Defendant has no right to title or interest in said money;

-34-

34. For an order declaring that if Plaintiffs' interest in the above-described funds taken by Defendant is disposed of before this judgment becomes final, Cross-Complainant is the owner of the equivalent of said funds held by Defendant;

35. For an order mandating that Defendant convey to Cross-Complainant forthwith all money owed to Plaintiffs by Defendant;

36. For damages in the amount of all monies found owing to Plaintiffs.

On the FIFTHTEENTH COUNT:

37. General damages according to proof (but at least in the amount of $200,000.00);

38. Special damages according to proof;

39. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

On the SIXTEENTH COUNT:

43. The full amount of the bonds issued by Old Republic and DOES 11-15;

On the SEVENTEENTH COUNT:

44. General damages in the amount of at least $200,000.00;

45. For special damages according to proof;

On ALL COUNTS:

46. For the cost of suit incurred herein, including attorneys fees pursuant to Business and Professions Code Section 7160 and Code of Civil Procedure Section 1029.8(a) and other codes;

47. For treble damages pursuant to Code of Civil Procedure Section 1029.8; and

-35-

Case: 11-54779   Doc# 10-2   Filed: 10/28/11   Entered: 10/28/11 15:33:36   Page 7 of 16

48. For such other and further relief as the Court may deem proper.

Dated: 7/9/10

WADE & SILVERSTEIN

By: _____
AMIEL L. WADE

Attorneys for Plaintiffs
PLAINTIFF JEFF GREEN AND PAMELA
MILLS-GREEN'S

-36-

# EXHIBIT A

# CONTRACTOR AGREEMENT

**OWNER'S NAME:** Jeff and Pamela Green
**ADDRESS:** 1381 Arleen Ave
Sunnyvale, CA 94087

**CONTRACTOR:** Hale Creek Construction, Inc.
**ADDRESS:** 120 N Murphy Ave
Sunnyvale, CA 94086
**CA License #:** 905738

### A. PARTIES

This contract (hereinafter referred to as "Agreement") is made and entered into on this _____ day of _____, 20___ by and between <u>Jeffery and Pamela Green</u> (hereinafter referred to as "Owner"); and Hale Creek Construction, Inc. (hereinafter referred to as "Contractor"). In consideration of the mutual promises contained herein, Contractor agrees to perform the following work, subject to the terms and conditions below:

### B. GENERAL SCOPE OF WORK DESCRIPTION

The Contractor shall furnish all of the materials and/or perform all of the work identified in the authorized Proposal(s): <u>#2010-48</u>, annexed hereto (hereinafter referred to as "Proposal").

  a. **LUMP SUM PRICE FOR ALL WORK ABOVE\*:** $17,240.00
  (Seventeen Thousand Two Hundred Forty Dollars and Zero Cents)

  \* This Agreement will expire 7 days after the date at the top of page one of this Agreement if not accepted in writing by Owner and returned to Contractor within that time.

### C. GENERAL CONDITIONS FOR THE AGREEMENT ABOVE

  a. **DATE OF WORK COMMENCEMENT AND SUBSTANTIAL COMPLETION:** Commence work on or about June 14, 2010 Construction time through substantial completion: Six Weeks (July 26, 2010), not including delays and adjustments for delays caused by: holidays; inclement weather; accidents; shortage of labor or materials; additional time required for Change Order and additional work; delays caused by Owner, Owner's design professionals, agents, and separate contractors; and other delays unavoidable or beyond the control of the Contractor.

  b. **SITE PREPARATION:** Owner assumes sole responsibility for the compliance with set back and property use restrictions and location of the structures on the premises and shall indemnify and hold Contractor harmless for any and all damages and attorney fees arising therefrom. All site preparation is to be handled by Owner unless stated otherwise in the Proposal.

  c. **INSURANCE:**
   i. Contractor shall obtain general liability insurance during the progress of the construction and shall also maintain insurance required under the Workmen's Compensation and other laws of the State of California.
   ii. Contractor shall not be responsible for any loss due to fire, vandalism, weather or theft of any materials once delivered to the job site. Owner shall assume all responsibility for any such loss and Owner shall maintain insurance coverage to protect against the same. Owner waives any rights or claims Owner may have against Contractor for any personal injuries and/or property damages incurred by anyone on the property during the period of construction, and shall indemnify, defend and hold Contractor harmless from any claims asserted for such alleged injuries and/or damages.

  d. **PERMITS:** Contractor shall procure any and all necessary permits and, in the performance of construction, shall conform to all laws and ordinances which may be applicable thereto.

Case: 11-54779   Doc# 10-2   Filed: 10/28/11   Entered: 10/28/11 15:33:36   Page 10 of 16

**CONTRACTOR AGREEMENT**

Should the cost of any permit(s) increase over and above the price established at the time of the execution of this Agreement, Owner shall pay the increased cost of obtaining such permit(s).

e. LICENSED CONTRACTOR REQUIRED NOTIFICATIONS:
STATE LAW REQUIRES ANYONE WHO CONTRACTS TO DO CONSTRUCTION WORK TO BE LICENSED BY THE CONTRACTORS STATE LICENSE BOARD IN THE LICENSE CATEGORY IN WHICH THE CONTRACTOR IS GOING TO BE WORKING-IF THE TOTAL PRICE OF THE JOB IS $500 OR MORE (INCLUDING LABOR AND MATERIALS).

LICENSED CONTRACTORS ARE REGULATED BY LAWS DESIGNED TO PROTECT THE PUBLIC. IF YOU CONTRACT WITH SOMEONE WHO DOES NOT HAVE A LICENSE, THE CONTRACTORS STATE LICENSE BOARD MAY BE UNABLE TO ASSIST YOU WITH A COMPLAINT. YOUR ONLY REMEDY AGAINST AN UNLICENSED CONTRACTOR MAY BE IN CIVIL COURT, AND YOU MAY BE LIABLE FOR DAMAGES ARISING OUT OF ANY INJURIES TO THE CONTRACTOR OR HIS OR HER EMPLOYEES.

YOU MAY CONTACT THE CONTRACTORS STATE LICENSE BOARD TO FIND OUT IF THIS CONTRACTOR HAS A VALID LICENSE. THE BOARD HAS COMPLETE INFORMATION ON THE HISTORY OF LICENSED CONTRACTORS, INCLUDING ANY POSSIBLE SUSPENSIONS, REVOCATIONS, JUDGMENTS, AND CITATIONS. THE BOARD HAS OFFICES THROUGHOUT CALIFORNIA. PLEASE CHECK THE GOVERNMENT PAGES OF THE WHITE PAGES FOR THE OFFICE NEAREST YOU OR CALL 1-800-321-CSLB FOR MORE INFORMATION.

f. CONTRACTOR NOT TO BE RELIED UPON AS ARCHITECT, ENGINEER, OR DESIGNER: The Contractor is not an architect, engineer, or designer. Contractor is not being hired to perform any of these services. To the extent that Contractor makes any suggestions in these areas, the Owner acknowledges and agrees that Contractor's suggestions are merely options that the Owner may want to review with the appropriate design professional for consideration. Contractor's suggestions are not a substitute for professional engineering, architectural, or design services, and are not to be relied on as such by Owner. The Contractor is not responsible for ascertaining whether details in Owner's plans conform to all applicable building and planning codes. The Contractor is not responsible for the cost of correcting errors and omissions by the Owner's design professionals and separate contractors.

g. CHARGES FOR ADDITIONAL WORK: CONCEALED CONDITIONS, DEVIATION FROM SCOPE OF WORK, AND CHANGES IN THE WORK

  i. CONCEALED CONDITIONS: This Agreement is based solely on the observations Contractor was able to make with the project in its condition at the time the work of this Agreement was bid. If additional concealed conditions are discovered once work has commenced or after this Agreement is executed which were not visible at the time this Agreement was bid, Contractor will point out these concealed conditions to Owner, and these concealed conditions will be treated as Additional Work under this Agreement. Contractor and Owner may execute a Change Order for this Additional Work. Contractor is released, held harmless, and indemnified by Owner from all pre-existing mold, fungus, mildew, and organic pathogen problems and is not responsible for costs or damages associated with correcting, containing, testing, or remediating the same.

  ii. DEVIATION FROM SCOPE OF WORK: Any alteration or deviation from the Scope of

(including any overage on ALLOWANCE work and any changes in the Scope of Work required by Owner, Owner's design professional, Owner's agent, or governmental plan checkers or field building inspectors) will be treated as Additional Work under this Agreement resulting in an additional charge to Owner as set forth herein. Contractor and Owner may execute a Change Order for this Additional Work.

Contractor to supervise, coordinate, and charge 20% profit and overhead on the following: all Additional Work under this Agreement, Additional Work caused by concealed conditions, all overages on ALLOWANCE work, all Owner-furnished materials, and all work of Owner's separate contractors who are working on site at same time as Contractor (any time in between when Contractor has commenced work and when the work is 100% complete by Contractor). The amount of the Additional Work will be reasonably determined by the Contractor, and will be subject to Contractor's profit and overhead as noted above.

iii. Exceptions to the Contractor charging profit and overhead on Owner-supplied materials and Owner's separate contractors are strictly limited to the following:

<u>All work and materials which has been paid for as of the date of this agreement.</u>

iv. Contractor's profit and overhead, and any supervisory labor will not be credited back to Owner with any deductive Change Orders (work deleted from Agreement by Owner).

v. LABOR RATES CHARGED FOR TIME-AND-MATERIALS WORK:
Bryan Temmermand............................................................$95/hour
Supervisor/Project Manager ..............................................$95/hour
Foreman/Journeyman/Lead ..............................................$85/hour
Carpenter Level II ................................................................$75/hour
Carpenter Level I .................................................................$65/hour
Carpenter's Assistant II/Laborer II ..................................$60/hour
Carpenter's Assistant I/Laborer I ....................................$55/hour

Contractor will charge for profit and overhead at the rate of 20% on all work performed on a Time-and-Materials basis and on all costs that exceed specifically stated ALLOWANCE estimates in the Proposal.

h. **EXCLUSIONS:**
This Agreement does not include labor or materials for the following work:
i. PROJECT-SPECIFIC EXCLUSIONS:

ii. STANDARD EXCLUSIONS: Unless specifically included in the "General Scope of Work" section above, this Agreement does not include labor or materials for the following work: Plans, engineering fees, or governmental permits and fees of any kind. Additional work required by governmental plan checkers on final "Red Lined" Job copy of plans that are yet to be issued. Testing, removal and disposal of any materials containing asbestos (or any other hazardous material as defined by the EPA). Custom milling of any wood for use in project. Moving Owner's



# CONTRACTOR AGREEMENT

Owner-supplied materials. Repair of concealed underground utilities not located on prints or physically staked out by Owner which are damaged during construction. Surveying that may be required to establish accurate property boundaries for setback purposes (fences and old stakes may not be located on actual property lines). Final construction cleaning (Contractor will leave site in "broom swept" condition). Landscaping and irrigation work of any kind. Temporary sanitation, power, or fencing. Removal of soils under house in order to obtain 18 inches (or code-required height) of clear space between bottom of joists and soil. Removal of filled ground or rock or any other materials not removable by ordinary hand tools (unless heavy equipment is specified in Scope of Work section above). Correction of existing out-of-plumb or out-of-level conditions in existing structure. Correction of concealed substandard framing. Rerouting/removal of vents, pipes, ducts, structural members, wiring or conduits, steel mesh which may be discovered in the removal of walls or the cutting of openings in walls. Removal and replacement of existing rot or insect infestation. Failure of surrounding part of existing structure, despite Contractor's good faith efforts to minimize damage, such as plaster or drywall cracking and popped nails in adjacent rooms or blockage of pipes or plumbing fixtures caused by loosened rust within pipes. Construction of a continuously level foundation around structure (if lot is sloped more than 6 inches from front to back or side to side, Contractor will step the foundation in accordance with the slope of the lot). Exact matching of existing finishes. Public or private utility connection fees. Repair of damage to roadways, driveways, or sidewalks that could occur when construction equipment and vehicles are being used in the normal course of construction. Cost of correcting errors and omissions by the Owner's design professionals and separate contractors. Cost of correcting/testing/remediating mold/fungus/mildew and organic pathogens unless caused by the sole and active negligence of Contractor as a direct result of a construction defect that caused sudden and significant water infiltration into a part of the structure. Cost of removing ponding ground water or other unusual concealed site conditions during excavation. Extra costs associated with refusal of caisson drilling, cave-ins, etc. Cost to modify and/or remanufacture custom brackets and other custom-fabricated materials that are manufactured per plans and/or specifications but do not fit properly into the structure.

1. **MATCHING EXISTING FINISHES:** Contractor will use his best efforts to match existing finishes and materials. However, an exact match is not guaranteed by Contractor due to such factors as discoloration from aging, a difference in dye lots, discontinuation of product lines, and the difficulty of exactly matching certain finishes, colors, and planes.

   Custom milling of materials has not been included in this Agreement, unless specifically stated in the Scope of Work section above. Unless custom milling of materials is specifically called out in the plans, specifications, or Scope of Work description above, any material not readily available at local lumberyards or suppliers is not included in this Agreement.

   If Owner requires an exact match of materials or textures in a particular area, Owner must

# CONTRACTOR AGREEMENT

Contractor will then provide Owner with either a materials sample or a test patch prior to the commencement of work involving the matching of existing finishes.

Owner must then approve or disapprove of the suitability of the match within 24 hours. After that time, or after Contractor has provided Owner with two or more test patches that have been rejected by Owner, all further test patches, materials submittals, or any removal and replacement of materials already installed in accordance with the terms of this section will be performed strictly as Extra Work on a time-and-materials basis by Contractor.

j. **CONTROL AND DIRECTION OF EMPLOYEES AND SUBCONTRACTORS:** Contractor, or his appointed Supervisor, shall be the sole supervisor of Contractor's Employees and subcontractors. Owner must not order or request Contractor's Employees or subcontractors to make changes in the work. Any such "agreements" made in a manner that is not consistent with this paragraph shall not be enforceable against the Contractor. All changes in the work are to be first discussed with Contractor and then performed according to the Change Order process as set forth in this Agreement.

k. **OWNER COORDINATION WITH CONTRACTOR:** Owner agrees to promptly furnish Contractor with all details and decisions about unspecified construction finishes, and to consent to or deny changes in the Scope of Work that may arise so as not to delay the progress of the Work. The cost of any delays in furnishing design decisions after construction has commenced will increase the contract amount consistent with any additional costs incurred by Contractor. Delays in furnishing design decisions after construction has commenced will also increase the contract time. Owner agrees to furnish Contractor with continual access to the job site.

l. ~~EXCESS MATERIALS: Any materials left over upon completion of the Residence shall be deemed to be Contractor's property. Contractor may enter upon the premises to remove excess material(s) at all reasonable hours.~~

m. **PERSONAL PROPERTY:** Any and all personal property of Owner that is in or near a work area is the responsibility of such Owner and Contractor is not responsible for any damage to or the monetary or replacement value of said personal property, and agrees to indemnify, defend and hold Contractor harmless from any claims related to stolen, damaged or destroyed personal property.

n. **CLEAN UP:** Contractor will leave the job broom clean each day and trash will be hauled away as needed (when an onsite dump trailer may be filled). At the end of the project, all trash and materials not used on the job will be removed. Owner is responsible for final cleaning including, but not limited to, dusting, cleaning of fixtures, wiping and cleaning cabinets, floor sweeping or mopping, cleaning of any dust or dirt that may have blown through the house, cleaning or changing filters in the heating and cooling system, cleaning of the HVAC itself, windows, drapes, window treatments, etc. Contractor will make every effort to limit dust and debris to the work area, but by no means will it guarantee there will not be dirt or dust that may filter into those areas of the Residence where construction is not occurring.

o. **PARKING:** Parking of vehicles will be in Owner's drive or in front of Owner's Residence. It is Owner's responsibility to provide neighbors with notice of any inconvenience.

p. **SIGNS:** Owner agrees to allow Contractor to place a sign from Contractor on Owner's Premises. No other sign will be permitted during construction and for a period of 30 days following completion of construction (with the exception of a real estate sign).

# CONTRACTOR AGREEMENT

q. **DRIVEWAY/SIDEWALKS/ACCESS:** Owner hereby expressly and unconditionally allows Contractor and its materialmen and subcontractors, the right to drive over driveways and sidewalks with their trucks, backhoe, concrete trucks, delivery trucks, etc. Unfortunately, this may result in cracks or other damage. If this does occur, Contractor will have it repaired at Owner's expense. Contractor does not guarantee/warranty against cracks and/or other defects. In the event these conditions do occur, the repair will be done as a change order to the Contract. If access to a Residence involves crossing over (or partially crossing over) another property, it is the Owner's responsibility to obtain written permission from the Property owner to allow for such access. Owner hereby agrees to pay for any grounds or landscaping repairs that may be needed, and agrees to indemnify, defend and hold Contractor harmless from any claims that may be asserted by such property owner.

r. **ENTIRE AGREEMENT, SEVERABILITY, AND MODIFICATION:**
This Agreement represents and contains the entire agreement and understanding between the parties. Prior discussions or verbal representations by Contractor or Owner that are not contained in this Agreement are not a part of this Agreement. In the event that any provision of this Agreement is at any time held by a Court to be invalid or unenforceable, the parties agree that all other provisions of this Agreement will remain in full force and effect. Any future modification of this Agreement should be made in writing and executed by Owner and Contractor.

s. **ADDITIONAL LEGAL NOTICES REQUIRED BY STATE OR FEDERAL LAW**
<u>NOTICE TO OWNER OR TENANT:</u>
YOU HAVE THE RIGHT TO REQUIRE CONTRACTOR TO HAVE A PERFORMANCE AND PAYMENT BOND.

<u>STATEMENT REGARDING WHERE TO FILE A COMPLAINT</u>
CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD, WHICH HAS JURISDICTION TO INVESTIGATE COMPLAINTS AGAINST CONTRACTORS IF A COMPLAINT REGARDING A PATENT ACT OR OMISSION IS FILED WITHIN FOUR YEARS OF THE DATE OF THE ALLEGED VIOLATION. A COMPLAINT REGARDING A LATENT ACT OR OMISSION PERTAINING TO STRUCTURAL DEFECTS MUST BE FILED WITHIN 10 YEARS OF THE DATE OF THE ALLEGED VIOLATION. ANY QUESTIONS CONCERNING THE CONTRACTOR MAY BE REFERRED TO THE REGISTRAR, CONTRACTORS STATE LICENSE BOARD, POST OFFICE BOX 26000, SACRAMENTO, CALIFORNIA 95826.

ATTACHED REQUIRED NOTICES:
"Information About Commercial General Liability Insurance"
"Checklist for Homeowners - Home Improvement"
"California Mechanics' Lien Law – NOTICE TO OWNER"

t. **WARRANTY**
Thank you for choosing our company to perform this work for you. Your satisfaction with our work is a high priority for us, however, not all possible complaints are covered by our warranty. <u>Contractor does provide a limited warranty against material defects on all Contractor and subcontractor-supplied labor and materials used in this project for a period of one year following substantial completion of all work.</u> This warranty covers normal usage only. You must contact the contractor at the address on page one of this agreement

# CONTRACTOR AGREEMENT

service. If the matter is urgent, you must also call the Contractor and send written notice of the need for warranty service. Failure to notify the contractor of the need for warranty service within ten days of discovery of a warranty item may void this warranty. Additionally, Owner's hiring of others or direct actions by Owner or Owner's separate contractors to repair a warranty item are not covered by this warranty and will not be reimbursed by Contractor.

No warranty is provided by Contractor on any materials furnished by the Owner for installation or by others. No warranty is provided on any existing materials that are moved and/or reinstalled by the Contractor within the dwelling or the property (including any warranty that existing/used materials will not be damaged during the removal and reinstallation process). One year after substantial completion of the project, the Owner's sole remedy (for materials and labor) on all materials that are covered by a manufacturer's warranty is strictly with the manufacturer, not with the Contractor.

Repair of the following items and related damages of every kind are specifically excluded from Contractor's warranty: problems caused by lack of Owner maintenance; problems caused by Owner abuse, Owner misuse, vandalism, Owner modification, or alteration; and ordinary wear and tear. Damages resulting from mold, fungus, and other organic pathogens are excluded from this warranty unless caused by the sole and active negligence of Contractor as a direct result of a construction defect which caused sudden and significant amounts of water infiltration into a part of the structure. Deviations that arise such as the minor cracking of concrete, stucco, and plaster; minor stress fractures in drywall due to the curing of lumber; warping and deflection of wood; shrinking/cracking of grouts and caulking; fading of paints and finishes exposed to sunlight are all typical (not material) defects in construction, and are strictly excluded from Contractor's warranty.

THE EXPRESS WARRANTIES CONTAINED HEREIN ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, HABITABILITY, OR FITNESS FOR A PARTICULAR USE OR PURPOSE. THIS LIMITED WARRANTY EXCLUDES CONSEQUENTIAL, INCIDENTAL, AND SPECIAL DAMAGES AND LIMITS THE DURATION OF IMPLIED WARRANTIES TO THE FULLEST EXTENT PERMISSIBLE UNDER STATE AND FEDERAL LAW. SOME STATES RESTRICT LIMITATIONS ON VARIOUS WARRANTIES, AND SO A CONSUMER'S RIGHTS UNDER THIS WARRANTY MAY VARY. THIS LIMITED WARRANTY MAY NOT BE VERBALLY MODIFIED BY ANY PERSON. THIS LIMITED WARRANTY IS GOVERNED BY THE LAWS OF THE STATE WHERE THE WORK WAS PERFORMED.

u. **LIMITATION OF WARRANTY WHEN CONTRACTOR INSTALLS OWNER-SUPPLIED FIXTURES AND MATERIALS:** Contractor cannot warrant any Owner-supplied materials or fixtures (whether new or used) or materials supplied by others. If fixtures or materials supplied by Owner or others fail due to a defect in the materials or fixtures themselves, Contractor will charge for all labor and materials required to repair or replace both the defective materials or fixtures, and any surrounding work that is damaged by these defective materials or fixtures.

D. **PAYMENT SCHEDULE AND PAYMENT TERMS**